## Commonwealth *v.* Herb, Appellant.

120

Argued September 12, 1967.   Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

*Robert C. McFadden,* with him *William J. Morrissey,* for appellant.

*Donald B. Corriere,* Assistant District Attorney, with him *Bernard V. O'Hare, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, P. J., November 16, 1967:

This is an appeal by the defendant from the refusal of the court below to quash an information charging him with a summary offense under The Vehicle Code, "following too closely."

The City of Bethlehem is the only third class city in Pennsylvania which lies in two counties. The alleged offense took place in the portion of the city which is in Lehigh County. The summons served on the defendant directed him to appear before the Bethlehem Traffic Court, which, during that particular month, was in charge of an alderman of Northampton County. The defendant waived the hearing and requested that the case be returned to the Court of Quarter Sessions of Lehigh County. Instead it was returned to the Court of Quarter Sessions of Northampton County. There the defendant moved to quash the information on the ground that the alleged offense arose in Lehigh County. After argument the defendant's motion was denied.

It is the defendant's contention that neither the Northampton alderman nor the Northampton Court of Quarter Sessions had jurisdiction over him.

There is no doubt but that the general rule is that a magistrate, justice of the peace or alderman has jurisdiction only over the locality from which he was elected, but there are statutory exceptions. For example, §1201 of The Vehicle Code, which consolidated and revised the law relative to motor vehicles (75 PS §1201), provides that informations charging violations of its summary provisions shall be brought before the nearest available magistrate, but it specifically excepted violations which could be brought before any magistrate of the traffic court of Philadelphia or before any police magistrate of the municipal traffic court of any city of the second class, together with two other exceptions not relevant here. The two classes of traffic courts had been previously established by the Acts of September 29, 1951, P. L. 1623, 53 PS §22291 et seq., and June 14, 1957, P. L. 315, 42 PS §1110.1 et seq., respectively. At that time there were no traffic courts authorized for cities of the third class or townships of the first class.

By the Act of July 10, 1961, P. L. 559, the legislature authorized the establishment of traffic courts in cities of the third class by adding §1201.1 to The Vehicle Code, 75 PS §1201.1,[1] which reads as follows: "(a) Any city of the third class may establish a traffic court which shall have jurisdiction over all traffic violations involving only summary offenses arising within the city under the provisions of this act or of any ordinance regulating traffic not inconsistent with this act.

---

[1] By the Act of August 8, 1963, P. L. 594, §1201.2 was added authorizing traffic courts in townships of the first class, 75 PS §1201.2.

"(b) Every such traffic court shall be in charge of an alderman having all the powers of a magistrate under the provisions of this act, such alderman to be designated by the mayor of the city from the elected aldermen of the city for a term not to exceed one (1) month.

"(c) When any such traffic court is closed, proceedings under this act shall be brought as otherwise provided."

Since the act itself became a portion of The Vehicle Code, it was not necessary to insert an additional exception in §1201. The new act clearly contemplated that the alderman in charge of the traffic court would have jurisdiction beyond the ward from which he was elected. If there be any question of inconsistency, the latter must control. Section 63 of the Statutory Construction Act of 1937, 46 PS §563, provides: "Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail."

In addition, §64 of the Statutory Construction Act, 46 PS §564, provides: "Except as provided in section sixty-three, whenever, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail."

It follows that under either provision, the Act of 1961, being special as opposed to general, and being last in both date and position, must control.

In any city of the third class which established a traffic court authorized by the Act of 1961, the alder-

man in charge would have jurisdiction beyond his own ward. However, at the present time the jurisdiction of an alderman in the City of Bethlehem also extends beyond his own county. There is nothing inherently improper in this. The legislature has the right to set up proper bases of classification and it chose to use the boundaries of the city rather than the boundaries of the county. It may well be that some time in the future other third class cities will cross county lines, but at the present time Bethlehem is the only city that does so. However, it was not required to set up two traffic courts, one in each county. In fact, the act provides that "any city of the third class may establish *a* traffic court." (Emphasis supplied) Therefore we hold that the alderman in the present case had jurisdiction over the defendant. We also hold that the Court of Quarter Sessions of Northampton County had statutory jurisdiction in the matter. Section 211 of The Third Class City Code, 53 PS §35211, as enacted on June 23, 1931, provided: "Any city of the third class *heretofore* or hereafter formed out of one or more boroughs and/or townships, formed by the consolidation of boroughs partly lying or situate in different counties, shall, for all municipal purposes of government and control, be deemed and considered as under and within the jurisdiction of the courts of that county in which is situate the borough first incorporated of those forming such consolidated borough." (Emphasis supplied)

This section was amended on June 28, 1951 to read: "Any city *hereafter* formed out of two or more towns, townships, or boroughs, or any combination thereof situate in different counties, shall, for all municipal purposes of government and control, be deemed and considered as under and within the jurisdiction of the courts of that county in which at the time the charter of the city is issued the larger percentage of the popu-

lation of the new city, according to the last decennial census, is resident. *The jurisdiction of any such city already chartered shall remain as heretofore."* (Emphasis supplied)

We are informed by the briefs and by the opinion of Judge CLINTON BUDD PALMER that the Borough of Bethlehem in Northampton County was incorporated on March 6, 1845, the Borough of South Bethlehem in Northampton County was incorporated on August 21, 1865, and the Borough of West Bethlehem in Lehigh County was incorporated in 1886. In 1904 the Borough of Bethlehem consolidated with the Borough of West Bethlehem and on July 17, 1917 consolidated with the Borough of South Bethlehem and was chartered as the City of Bethlehem.

Thus the Borough of Bethlehem, Northampton County, was first incorporated and under the provisions of the Act of 1931 it was, for all municipal purposes of government and control, under and within the jurisdiction of the courts of Northampton County.

The court below properly dismissed the defendant's motion to quash the information and its order is affirmed.